UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CREMA SOCIAL, INC.,

        Plaintiff,

    v.

APPLE INC.,

        Defendant.

Case No. 25-cv-08905-EKL

**ORDER GRANTING MOTION TO DISMISS AND MOTION TO STAY DISCOVERY**

Re: Dkt. Nos. 27, 37

Plaintiff Crema Social, Inc., a software developer, asserts that Apple Inc. wrongfully terminated Plaintiff's membership in the Apple Developer Program and removed Plaintiff's social media application from the Apple App Store. Compl. ¶¶ 6-13, ECF No. 1. Apple moves to dismiss the complaint for failure to state a claim. Mot. to Dismiss, ECF No. 27. Apple also moves to stay discovery pending the Court's resolution of "the threshold legal issue presented" in the motion to dismiss: "whether the discretionary termination rights reflected in the parties' binding contracts bar [Plaintiff's] claims." Mot. to Stay at 1, ECF No. 37. Having reviewed the briefs and the relevant authority, the Court finds these matters suitable for disposition without oral argument. *See* Civil L.R. 7-1(b). For the following reasons, both motions are GRANTED.

## I.     BACKGROUND

Plaintiff is a software company that "developed and operates an innovative social media app" – the Crema Social app – "which allows its users to connect, socialize, and communicate across different cultures in different regions of the world." Compl. ¶ 6. According to the complaint, the Crema Social app "provides a novel platform that connects people internationally, and even enables them to communicate over foreign language barriers using cutting-edge AI translation technology and to send each other meals, as part of the meeting process." *Id*. Plaintiff

maintained a membership in the Apple Developer Program ("ADP") pursuant to the terms of the Apple Developer Program License Agreement ("DPLA"). *Id*. ¶ 7. The terms of the DPLA are discussed further below. Relevant here, Plaintiff's ADP membership "allowed Plaintiff to distribute and promote" the Crema Social app "to end users through the Apple App Store." *Id*.

Plaintiff's claims arise from Apple's termination of Plaintiff's ADP membership and removal of the Crema Social app from the App Store. Plaintiff alleges that, after some correspondence "regarding the services provided" by the Crema Social app, Apple sent Plaintiff a termination notice on December 11, 2024. *Id*. ¶¶ 8-9. The notice indicated that Plaintiff's ADP membership would be terminated because Plaintiff "engaged in concept or feature switch schemes to evade" Apple's review process for applications distributed through the App Store, and because the Crema Social app included content that was "not appropriate for the App Store." *Id.* ¶ 9. Plaintiff disputed these assertions and specifically denied that the Crema Social app facilitates "prostitution, sugar relationships, compensated dating or sex trafficking." *Id*. ¶ 12. Apple removed the Crema Social app from the App Store and, on January 24, 2025, terminated Plaintiff's ADP membership. *Id*. ¶ 13. In subsequent correspondence, Apple has maintained that the Crema Social app "facilitated or encouraged compensated dating or companionship" in violation of Apple's App Review Guidelines. *Id*. ¶¶ 14-20.

Plaintiff asserts five claims: (1) breach of the implied covenant of good faith and fair dealing; (2) intentional interference with contractual relations; (3) intentional interference with prospective economic advantage; (4) negligent interference with prospective economic advantage; and (5) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL"). Compl. ¶¶ 26-61. Apple moves to dismiss all claims.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

2

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  If dismissal is warranted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III.    REQUEST FOR JUDICIAL NOTICE

When deciding a Rule 12(b)(6) motion, courts generally do not consider material outside of the pleadings.  *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011).  However, courts may consider "documents incorporated in the complaint by reference."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  Incorporation by reference "treats certain documents as though they are part of the complaint itself.  The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'"  *Id*. (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).

Apple asks the Court to consider four exhibits in connection with its motion to dismiss.  *See* Req. for Judicial Notice, ECF No. 27-1 ("RJN").  Exhibit 1 is a copy of the Apple Developer Agreement.  Milici Decl. Ex. 1, ECF No. 27-4.  Exhibit 2 is a copy of the DPLA.  Milici Decl. Ex. 2, ECF No. 27-5.  Exhibit 3 is a copy of Apple's App Review Guidelines.  Milici Decl. Ex. 3, ECF No. 27-6.  Exhibit 4 is a May 23, 2025 letter from Apple to Plaintiff explaining Apple's position that the Crema Social app violated the DPLA and Apple's App Review Guidelines.  Milici Decl. Ex. 4, ECF No. 27-7.

3

The Court finds that Exhibits 2 and 3 are incorporated by reference in the complaint. Plaintiff acknowledges that the DPLA "is the agreement on which Plaintiff's claims are based," and thus does not dispute that it is incorporated by reference. Opp. to RJN at 3, ECF No. 30. The Court finds that the DPLA is incorporated by reference because it forms the basis of Plaintiff's claim that Apple acted in bad faith. Compl. ¶ 23 ("Apple's misconduct is directly at odds with the terms and spirit of the DPLA, and it has deprived Crema Social from the benefit of its bargain of the DPLA[.]"); *see also id*. ¶¶ 7, 13, 29-30, 35, 45, 52. The App Review Guidelines are also incorporated by reference, though they are not material to the Court's analysis. Compliance with the App Review Guidelines is an important term of the DPLA, and noncompliance is one basis for Apple to cease offering a developer's app in the App Store. *See* DPLA Schedule 1 § 6.3. Additionally, Plaintiff relies on its claimed compliance with the App Review Guidelines as evidence that Apple acted in bad faith. *See* Compl. ¶ 19. Moreover, in the complaint's prayer for relief, Plaintiff asks the Court to declare "Plaintiff, at all times, has been in compliance with" the terms of the "Apple Review Guidelines." Compl. at 15.

By contrast, the Court will not consider Exhibits 1 and 4. Apple's request for incorporation by reference of the Apple Developer Agreement is moot because the DPLA is dispositive of Apple's motion to dismiss as explained below. Apple's letter dated May 23, 2025, is also immaterial to the Court's ruling, and it is not incorporated by reference in the complaint. The complaint references this letter just once when summarizing Apple's reasons for refusing to reinstate Plaintiff's ADP membership. Compl. ¶ 17. A single reference to a document is "not sufficiently extensive" for incorporation by reference, *Khoja*, 899 F.3d at 1003, and the letter does not form the basis of Plaintiff's claims.[1]

In sum, Apple's request for judicial notice is GRANTED as to Exhibits 2 and 3, but DENIED as to Exhibits 1 and 4.

---

[1] However, the Court notes that Plaintiff makes greater use of the May 23, 2025 letter in its opposition brief. *See* Opp. at 7, 11, ECF No. 29 (arguing that the letter is evidence of bad faith because it reflects "Apple's shifting bases" for removing the Crema Social app).

United States District Court
Northern District of California

## IV.    DISCUSSION

Apple moves to dismiss all claims, relying primarily on its contractual right to terminate the DPLA and to remove the Crema Social app from the App Store.  The Court first summarizes the key terms of the DPLA, then addresses each claim.

### A.    The DPLA's Terms

The DPLA outlines the terms under which a developer like Plaintiff may use certain Apple Software to develop an application for use on Apple devices.  The stated purpose of the DPLA is to facilitate development of applications "for Apple-branded products."  *Id.* at 1.  To that end, Apple grants developers "a limited license to use the Apple Software and Services . . . to develop and test [their] Applications on the terms and conditions set forth in [the DPLA]."  *Id.*  "Either party may terminate [the DPLA] for its convenience, for any reason or no reason, effective 30 days after providing the other party with written notice of its intent to terminate."  *Id.* § 11.2.

The DPLA also provides that some applications may be distributed through the App Store, but "only if selected by Apple (in its sole discretion)."  *Id.* § 3.2(g).  Apple "may, in its sole discretion . . . reject [an] Application for distribution for any reason."  *Id.* § 6.9.  After an application is accepted for distribution through the App Store, both Apple and the developer have the right to remove the application from the App Store at any time.  "Apple reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without cause, by providing notice of termination to [the developer]."  DPLA Schedule 1 § 6.3.  Likewise, a developer "may withdraw any or all of the Licensed Applications from the App Store . . . at any time, and for any reason[.]"  *Id.* § 6.4

In sum, these provisions establish that the DPLA is mutually terminable by either party, and applications may be removed from the App Store by either party, upon satisfying the relevant notice requirements.

### B.    Bad Faith Claim

"The gravamen of Plaintiff's claims is that [Apple] permanently and arbitrarily removed the [Crema Social app] from the App Store despite Plaintiff's full compliance with all applicable terms and conditions of the DPLA."  Opp. to Mot. to Dismiss at 12, ECF No. 29.  A claim for

*United States District Court*
*Northern District of California*

breach of the implied covenant of good faith and fair dealing requires "a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act[.]" *VFLA Eventco, LLC v. William Morris Endeavor Ent., LLC*, 100 Cal. App. 5th 287, 312-13 (2024) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)).

Although a plaintiff need not identify a "breach of a specific provision of [a] contract" to state a claim, "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992) (in bank). It follows that the implied covenant cannot require action that contradicts the rights and obligations set forth by a contract's express terms. The Supreme Court of California has observed: "We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms." *Id.* at 373-74; *see also Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) ("Plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair dealing, because 'if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.'" (quoting *Carma*, 2 Cal. 4th at 374)).

Here, Plaintiff does not plausibly allege that Apple acted in bad faith because the conduct challenged in the complaint is expressly authorized by the plain terms of the DPLA. With respect to Plaintiff's participation in the ADP, the DPLA authorizes Apple to terminate "for any reason or no reason, effective 30 days after providing the other party with written notice of its intent to terminate." *Id*. § 11.2. Plaintiff alleges that this notice requirement was met: Apple provided notice on December 11, 2024, and it terminated Plaintiff's ADP membership on January 24, 2025. Compl. ¶¶ 9, 13. The DPLA also authorized Apple to "cease marketing, offering, and allowing download by end-users of the [Crema Social app] at any time, with or without cause, by providing notice of termination." DPLA Schedule 1 § 6.3. Again, Plaintiff alleges that Apple provided notice of termination, as required by the DPLA. Compl. ¶¶ 8-9.

Relying on another clause of Schedule 1 § 6.3, Plaintiff argues that Apple needed to form "a reasonable belief" that Plaintiff violated the DPLA before removing the Crema Social app from the App Store. Opp. to Mot. to Stay at 7 n.2, ECF No. 38. This argument is untenable. The DPLA states that Apple may cease offering an application through the App Store "at any time, with or without cause." DPLA Schedule 1 § 6.3. The clause that Plaintiff emphasizes states that "Apple may cease allowing download [of an application] by end-users . . . if Apple reasonably believes" that the developer violated the DPLA or the App Review Guidelines. DPLA Schedule 1 § 6.3. But this "reasonable belief" clause expressly does not "limit[] the generality" of Apple's right to cease offering an application "at any time, with or without cause." *Id*. The Court cannot construe this clause, which is expressly ***not limiting***, as a limitation on Apple's contractual rights. *See FTC v. EDebitPay, LLC*, 695 F.3d 938, 943 (9th Cir. 2012). Plaintiff also argues that the "reasonable belief" clause would be superfluous if it has no limiting effect, but it is neither superfluous nor unusual for a contract to list non-exhaustive examples of a general provision. *See id*. By contrast, Plaintiff's preferred interpretation would render the primary clause – that Apple may act "with or without cause" – superfluous.[2]

Next, Plaintiff argues that the Court must read into the DPLA an undefined limitation on Apple's termination rights. Opp. to Mot. to Dismiss at 17. It is true that, "where one party is invested with a discretionary power affecting the rights of another," that power "must be exercised in good faith." *Carma*, 2 Cal. 4th at 372. But "courts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement." *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th

---

[2] Plaintiff also argues that Apple cannot rely on DPLA Schedule 1 § 6.3 because Apple raised it for the first time in its reply brief. The Court is not persuaded. Although Apple primarily relied on other provisions, it did invoke Schedule 1 § 6.3 in its motion. Mot. to Dismiss at 6. It was not improper for Apple to expand on this argument in its reply to respond to arguments raised in Plaintiff's opposition brief. *See* Opp. to Mot. to Dismiss at 13 ("If Defendant desired for the DPLA to confer upon it the unfettered discretion to remove applications from the App Store, it should have included such a provision that specifically referenced the App Store. But it did not."). In any event, Plaintiff was not prejudiced because it used its opposition to Apple's motion to stay discovery to respond to Apple's reliance on this provision. Opp. to Mot. to Stay at 7.

798, 808 (1995); *see also 618Media Dijital Hizmetler Ltd. Sirketi v. Apple Inc.*, No. 24-cv-02952-EJD, 2025 WL 2614983, at *5 (N.D. Cal. Sep. 9, 2025). Here, there is no need to imply a further limitation on Apple's termination rights because "a contract with a mutual termination provision is not illusory when conditioned on notice." *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC*, 185 Cal. App. 4th 1050, 1063 (2010). That is precisely the structure of the DPLA, which provides parallel and mutual termination rights to both Plaintiff and Apple upon notice to the other party. DPLA § 11.2; DPLA Schedule 1 §§ 6.3, 6.4.

Additionally, imposing a further limitation on Apple's termination rights would frustrate the purpose of the DPLA and contradict its express terms. The purpose of the DPLA is to provide developers with a limited, non-exclusive license to use Apple software to develop and test applications, and to create a distribution arrangement that is mutually terminable at will by Apple or the developer. DPLA §§ 1, 3.2(g), 6.9. Just as Apple may remove an application from the App Store at any time by providing notice, so may a developer withdraw its application from the App Store at any time, and for any reason. DPLA Schedule 1 §§ 6.3, 6.4. Apple assumed no contractual obligation to continue distributing an application, and developers assumed no contractual obligation to continue offering an application through the App Store – even if withdrawal of the application would disappoint Apple users, undermine the value of the App Store, or deprive Apple of commissions. Accordingly, based on the DPLA, the Court cannot compel Apple to continue distributing the Crema Social app, just as the Court could not compel Plaintiff to continue offering the Crema Social app to Apple users.

The cases cited by Plaintiff do not support its position. Instead, they demonstrate that courts will imply limits to a contract's express terms only under specific circumstances. For example, *Chodos v. West Publishing Co.*, 292 F.3d 992 (9th Cir. 2002), involved a contract between an author and a publisher. The author "spent a number of years fulfilling his part of the bargain and had submitted a completed manuscript" of a treatise. *Id*. at 994. But the publisher "declined to publish the treatise, citing solely sales and marketing reasons." *Id*. The Ninth Circuit held that, because the contract "obligate[d] the publisher to make a judgment as to the quality or literary merit of the author's work . . . it must make that judgment in good faith, and cannot reject

a manuscript for other, unrelated reasons." *Id*. at 997. The agreement in *Chodos* is distinguishable because it "impose[d] numerous obligations on the author" but imposed no obligation on the publisher. *Id*. at 996-97. Because the contract required one party to perform, but permitted the author party to terminate at will, it lacked "mutuality of obligation" unless the publisher's discretion was "limited by its duty of good faith and fair dealing." *Id*. at 997. Here, by contrast, the DPLA is mutually terminable at will by either Plaintiff or Apple upon notice – which was given. Moreover, Apple has performed under the DPLA by licensing its software to Plaintiff for developing and testing the Crema Social app, and by distributing the app through the App Store. *See* Compl. ¶ 7. The DPLA is not illusory because neither Plaintiff nor Apple is required to unilaterally perform subject to the other party's termination and non-performance on a whim.

Plaintiff's other authority is likewise unpersuasive. In *Reyes v. Wells Fargo Bank, N.A.*, the court rejected a bank's position that it could "foreclose on Plaintiffs' home at any time, without notifying Plaintiffs . . . even if Plaintiffs have complied with all the requirements of" the parties' forbearance agreement. No. C-10-01667 JCS, 2011 WL 30759, at *16 (N.D. Cal. Jan. 3, 2011). The court held that the forbearance agreement would be illusory if it granted the bank "sole discretion to terminate . . . at any time without notice to Plaintiffs." *Id*. Of course, permitting a bank to capriciously foreclose on a home while the homeowners were making the required payments would frustrate the very purpose of a forbearance agreement – *i.e.*, to stave off foreclosure. *See id.* at *2. Nor does *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165 (2015), support Plaintiff's position. In *Serafin*, the court stated the uncontroversial proposition that an employer may not exercise its discretionary power to ***modify*** its employment policies and practices in bad faith. *Id*. at 176. But here, Plaintiff does not allege that Apple unilaterally modified the terms of the DPLA. Instead, according to the complaint, Apple terminated the DPLA based on the existing, mutual termination provision.[3]

---

[3] Plaintiff's other authority is also inapposite. *See InfoStream Grp., Inc. v. PayPal, Inc.*, No. C 12-748 SI, 2012 WL 3731517, at *8 (N.D. Cal. Aug. 28, 2012) (Plaintiffs plausibly alleged "that PayPal acted in bad faith by terminating the [plaintiffs' account] for the sole purpose of benefitting plaintiffs' competitors."); *Campbell v. eBay, Inc.*, No. 13-CV-2632 YGR, 2014 WL 3950671, at *2-3 (N.D. Cal. Aug. 11, 2014) (Plaintiff plausibly alleged bad faith based on alleged violations of the express terms of eBay's Buyer Protection Policy and other conduct that frustrated the

Finally, Plaintiff argues that Apple's termination rights must by curtailed to avoid an antitrust violation or unconscionability. Opp. to Mot. to Dismiss at 20-21. These arguments are half-baked. As to the purported antitrust violation, the complaint asserts without support that "Apple is a dominant and controlling player in the mobile app industry." Compl. ¶ 21. But merely labeling Apple as "dominant" is insufficient to plausibly allege that it has monopoly power. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995). And the complaint does not address the other requirements for an antitrust violation – namely, adverse effects on competition. *See Gamboa v. Apple Inc.*, 808 F. Supp. 3d 951, 962, 964 (N.D. Cal. 2025). Similarly, Plaintiff's argument as to unconscionability is untethered to allegations in the complaint, and the DPLA is not lacking in mutuality for the reasons stated above.

For these reasons, Plaintiff fails to plausibly allege that Apple breached the implied covenant of good faith and fair dealing.

### C.    Interference Claims

Plaintiff asserts three claims with similar elements: intentional interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage. First, to state a claim for intentional interference with contractual relations, Plaintiff must plausibly allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). Second, a claim for intentional interference with prospective economic advantage has similar elements but differs in two respects: It extends to "[e]conomic relationships short of contractual" ones, but requires "that the defendant's interference was wrongful by some measure beyond the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-93 (1995) (citation modified). Finally, a claim for negligent interference with prospective economic advantage has

plaintiff's legitimate expectations.)

10

the same elements as its intentional interference counterpart, except the defendant's conduct must be negligent – *i.e.*, the defendant must violate a duty of care owed to the plaintiff. *Damabeh v. 7-Eleven, Inc.*, No. 12-CV-1739-LHK, 2013 WL 1915867, at *8-9 (N.D. Cal. May 8, 2013).

Here, each interference claim fails for the same reason. When a party to a contract "lawfully exercise[s]" its contractual right, it is not liable for tortious interference, and its conduct cannot be considered "wrongful." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1130 (9th Cir. 2014). For the reasons stated above, as alleged in the complaint, Apple acted pursuant to its contractual termination rights under the DPLA. This conduct does not constitute tortious interference, it was not "wrongful," and it did not violate any duty of care owed to Plaintiff because Apple complied with its contractual obligations. *See 618Media*, 2025 WL 2614983, at *7 (dismissing claims for tortious interference with contract and prospective economic advantage because "Apple was expressly permitted to terminate the [plaintiff's] account"); Order at 8-11, *Sarafan Mobile Ltd. v. Apple Inc.*, No. 24-cv-02698-JSW (N.D. Cal. July 30, 2025), ECF No. 41 (dismissing similar claims because "Apple's decision to terminate the relationship according to its terms was permissible"). Accordingly, Plaintiff fails to plausibly allege any form of interference.

### D.    Unfair Competition Claim

Plaintiff also claims that Apple's conduct violates the UCL. The UCL prohibits "unlawful," "unfair," and "fraudulent" business acts and practices. Cal. Bus. & Prof. Code § 17200. Here, Plaintiff alleges unlawful and unfair conduct. Compl. ¶ 59. This claim is entirely derivative of the claims discussed above and it fails for the same reasons.

First, Plaintiff fails to allege a violation of any other law, so the "unlawful" prong claim fails. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (explaining that the UCL unlawful prong borrows violations of other laws).

Second, in defense of its "unfair" prong claim, Plaintiff argues that the "Ninth Circuit has already affirmed that restrictive provisions similar to those [Apple] asserts here are 'unfair' under the UCL, even if they do not violate state or federal antitrust law." Opp. to Mot. to Dismiss at 25 (citing *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000-01 (9th Cir. 2023)). But the unfair

United States District Court
Northern District of California

11

conduct in *Epic Games* involved an anti-steering provision that prohibited app developers from communicating "out-of-app payment methods through certain mechanisms such as in-app links." *Epic Games*, 67 F.4th at 968. That provision is not at issue in this case, and Plaintiff cannot rely on post-trial findings in a separate case to meet its pleading burden here just because Apple is a defendant in both cases. Accordingly, Plaintiff fails to plausibly allege a UCL claim.

### E. Leave to Amend and Stay of Discovery

Because this is the Court's first ruling on the legal sufficiency of Plaintiff's allegations, dismissal is with leave to amend. *See Lopez*, 203 F.3d at 1127 (holding that the "court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (quoting *Doe*, 58 F.3d at 497)). However, the Court may dismiss Plaintiff's claims with prejudice if the amended complaint fails to plausibly state a claim. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding that failure to correct pleading deficiencies after dismissal is a "strong indication" that further amendment would be futile); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996))).

In its motion to dismiss, Apple raised additional grounds for dismissal of each claim. The Court did not reach these issues because the plain language of the DPLA was dispositive, but Plaintiff should consider them when amending the complaint. Additionally, any amended complaint must be consistent with Plaintiff's Rule 11 obligations. The Court declined to consider certain materials that Apple submitted with its motion to dismiss. *See supra* § III. But Plaintiff is on notice of these materials – and the contents and features of its own application – and Plaintiff must consider this information as part of its reasonable inquiry into the factual bases for its claims.[4] *See* Fed. R. Civ. P. 11(b)(3).

---

[4] *Compare* Compl. ¶ 12 (denying that the Crema Social app facilitates "compensated dating"), *with* Milici Decl. Ex. 4 at ECF pages 6-38 (purporting to reflect suggestive photographs of 20 Crema Social platform users, with an option to "[b]ook a virtual date" with each user).

Moreover, discovery shall be stayed until Plaintiff plausibly states a claim. When a complaint "fail[s] to satisfy Rule 8's plausibility standard," the district court lacks "discretion to permit discovery" on the dismissed claims. *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 n.7 (9th Cir. 2014); *see also In re German Auto. Mfrs. Antitrust Litig.*, 335 F.R.D. 407, 409 (N.D. Cal. 2020) ("Once a court has found a plaintiff's complaint deficient under Rule 8, that plaintiff is no longer entitled to plausibility discovery."). Here, Plaintiff's allegations have been dismissed for failure to plausibly state a claim. Thus, Plaintiff is not entitled to discovery. The Court also finds that Apple has satisfied the requirements for a discretionary stay of discovery pending resolution of the pleadings. *See Reveal Chat Holdco, LLC v. Facebook, Inc.*, No. 20-cv-00363-BLF, 2020 WL 2843369, at *2 (N.D. Cal. Apr. 10, 2020). As reflected above, Apple raised forceful challenges to the complaint, and discovery is not necessary to determine the legal viability of Plaintiff's claims.

## V.    CONCLUSION

For the foregoing reasons, Apple's motion to dismiss is GRANTED. Plaintiff may file an amended complaint within 21 days of this Order, which shall be accompanied by a redline comparing it to the original complaint. Additionally, discovery is STAYED pending further order of the Court.

**IT IS SO ORDERED.**

Dated: March 11, 2026

Eumi K. Lee
United States District Judge

United States District Court
Northern District of California

13